## Kershaw v. Upper Merion Township

*H. Richard Bixby*, for plaintiffs.
*Daniel L. Quinlan, Jr.*, for defendant.
*Joseph J. McGrory*, for intervenors.

HONEYMAN, J., April 7, 1961.—Plaintiffs in this action filed a complaint under the Second Class Township Code of May 1, 1933, P. L. 103, art. VII, sec. 702, cl. XXV, as amended, 53 PS §65741, which provides that, within 30 days after any ordinance takes effect, any person aggrieved may make complaint as to the legality of the ordinance to the court of quarter sessions. Plaintiffs contend that ordinance no. 86, passed by the Board of Supervisors of Upper Merion Township, on June 23, 1960, is illegal because the procedure required by the Second Class Township Code and the Upper Merion Township Zoning Ordinance of 1942, as amended, for the enactment of an ordinance was not followed. The ordinance changed the zoning of a tract of ground in Upper Merion Township from "R-2" residential to "R-3" residential. King of Prussia Arms, Inc., a Pennsylvania corporation, as a party in interest, entered the proceedings before this court as an intervenor.

After hearing this court makes the following

### Findings of Fact

1. Plaintiffs are Isaac Kershaw, 3rd, and Mary Anna Kershaw, his wife, and they reside at 165 Nancy Lane, King of Prussia, Upper Merion Township, Montgomery County, Pa.

2. Defendant, Upper Merion Township, is a second class township in Montgomery County, Pa., existing under The Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §65101-67605.

3. On January 11, 1960, an advertisement appeared in the Times Herald, a newspaper of general circulation published in Norristown, to the effect that the Board of Supervisors of Upper Merion Township would hold their regular monthly meeting on the second Thursday of each month during 1960, and

would hold special meetings for the conduct of general township business on the first, third, and fourth Thursday of each month until further notice.

4. In February of 1960, Kjell Ingebrigtsen submitted an application or request to the Board of Supervisors of Upper Merion Township to change the zoning of a tract of land of approximately 3.22 acres from "R-2" residential to "R-3" residential.

5. On December 4, 1959, an agreement of sale for the property in question was executed between E. Jane Martin as seller and I. A. Ingebrigtsen et ux., as buyers, or their nominees. Settlement took place on April 7, 1960, and the deed was executed to I. A. Ingebrigtsen and Gudrun Ingebrigtsen as straw parties for King of Prussia Arms, Inc., as corroborated by an examination of the recorded deed in the recorder of deeds' office.

6. I. A. Ingebrigtsen and his wife are the parents of Kjell Ingebrigtsen.

7. Kjell Ingebrigtsen is the president of King of Prussia Arms, Inc., and the property is presently titled in the name of the corporation. At the date of settlement for the property the corporation's registered name was King of Prussia Apartments, Inc., but articles of amendment were filed in the fall of 1960 and the corporate name is now King of Prussia Arms, Inc.

8. On March 31, 1960, at a meeting of the Board of Supervisors of Upper Merion Township, a resolution was enacted establishing a zoning hearing for April 18, 1960, to consider the application to rezone the property in question.

9. On April 7, 1960, there was published in the Times Herald a notice that the Board of Supervisors of Upper Merion Township would hold a public meeting on Thursday, April 21, 1960, for the purpose of

acting upon the application for rezoning of the property in question.

10. On April 13, 1960, there was published in the Times Herald a notice that the Board of Supervisors of Upper Merion Township would hold a public meeting on Thursday, April 28, 1960, for the purpose of acting upon the application for rezoning of the property in question. This notice stated the application would not be considered on Thursday, April 21, 1960, as previously advertised.

11. On Thursday, April 28, 1960, the public meeting of the township supervisors was held and the rezoning was discussed. At this meeting, Kjell Ingebrigtsen presented his reasons for rezoning and the use to which the property would be subjected. An opportunity was given at which a number of parties came forward to state their views on the requested rezoning of the property and a number of people in attendance signed their names as protestants to the requested rezoning. The board of supervisors then announced that the matter would be taken under advisement by them.

12. At a regularly scheduled meeting of the Upper Merion Planning Commission held on June 22, 1960, a majority thereof being present as evidenced by transcript of commissioner's minutes, the application to rezone the property in question was reviewed and considered by the planning commission, which recommended to the board of supervisors that the application to rezone be refused.

13. A public meeting of the board of supervisors was held on June 23, 1960. There was no notice given that the board of supervisors intended, at that meeting, to enact ordinance no. 86 which changed the zoning on the ground in question from "R-2" to "R-3" residential. The meeting of the board of supervisors was adjourned at 8:40 p.m. One of the supervisors then remembered that the ordinance had not been acted on and the meet-

ing was reconvened at 8:55 p.m. At the meeting, as reconvened, ordinance no. 86 was voted on and passed.

## Discussion

Plaintiffs assigned a number of reasons in support of their contention that the ordinance is illegal and void. They are as follows:

1. That Kjell Ingebrigtsen, the party who filed the application for the zoning change, was not a resident or property owner in Upper Merion Township when the application was filed nor when the ordinance was enacted.

2. That the board of supervisors did not, by resolution adopted at a stated or special meeting, fix the time and place for a public hearing on the proposed zoning changes, as required by section 2101 of the Upper Merion Township Zoning Ordinance of 1942, as amended.

3. That at the public meeting held on April 28, 1960, to act upon the application, the board of supervisors did not give all parties in interest an opportunity to be heard.

4. That at the meeting of April 28, 1960, which was advertised as the meeting to consider the application for rezoning, the board of supervisors adjourned without taking action on the application, and then approved the application at the meeting of June 23, 1960.

5. That the ordinance was not properly enacted, since the proposed ordinance was not published at least one week and not more than three weeks prior to its enactment.

6. That a date was not set, and, if set, was not advertised for the adoption of ordinance no. 86.

7. That the board of supervisors took action on the application without a final report from the planning commission and refused to abide by the recommendation that was made by the planning commission.

8. That the meeting of June 23, 1960, was secret, in that the meeting reconvened after having been adjourned for the evening, with the result that only those favoring enactment were heard at the reconvened meeting and at that time the ordinance was enacted.

9. That all notices were insufficient and untimely.

10. That the testimony of the applicant, Kjell Ingebrigtsen, when taken, was not under oath or affirmation.

The Act of May 1, 1933, P. L. 103, art. XX, sec. 2001, as amended, 53 PS §67001, vests in the supervisors of a second class township the power to enact zoning ordinances. Section 2004 of this act, 53 PS §67004, states the procedure for exercising this power. We will treat the objections of plaintiffs in the above order of statement.

In answer to the first objection, it will be noted that I. A. Ingebrigtsen and his wife were equitable owners of the subject property in February of 1960 when the application for the zoning change was made by their son, Kjell Ingebrigtsen. A corporation had been formed entitled King of Prussia Apartments, Inc., and I. A. Ingebrigtsen was a shareholder. Kjell Ingebrigtsen was a shareholder and an officer of this corporation. Because the funds were supplied by I. A. Ingebrigtsen and his wife, title was taken in their names, and at settlement the error was made of executing the deed to I. A. Ingebrigtsen and his wife as straw parties for King of Prussia Arms, Inc., instead of as straw parties for King of Prussia Apartments, Inc. Subsequently, in the fall of 1960, the corporate charter was amended and the corporation is now King of Prussia Arms, Inc. In Boston v. Warminster Township, 7 Bucks 215 (1957), a request for rezoning was made to the board of supervisors of a second class township by the brother of the title holder. In answering a similar objection to that raised here, the Bucks County court said:

". . . We know of no requirement that zoning regulations may be modified only on petition of the actual freeholder of the lands involved. Nor would such changes be in the nature of a right or privilege personal to one individual rather than another. Where a zoning ordinance refers to premises of a named owner in delineating a particular district for classification purposes, that circumstance does not limit the classification so made merely for the benefit of that particular party or only during his continued tenure; it is the land which is thereby descriptively referred to, not the individual person of the title-holder: Mount Lebanon Township Appeal, 371 Pa. 274, 278. We conclude, therefore, that the misnomer of the holder of record title is of no legal significance whatsoever": Boston v. Warminster Township (supra at 222).

In conferring on the supervisors the power to amend zoning regulations, the Second Class Township Code does not limit the power to legislate to situations in which an application for such amendment has first been made by a title holder, either legal or equitable, of land that would be affected or by a resident of the particular township: Act of May 1, 1933, P. L. 103, art. XX, secs. 2001, 2005, as amended, 53 PS §§67001, 67005. As a legislative body, a board of supervisors can act on its own initiative, and, having so acted, it is immaterial that the matter was brought to the attention of the legislative body by one not the record owner and not a resident of the township: Homefield Ass'n of Yonkers v. Frank, 75 N. Y. S. 2d 384 (1947). See Rathkopf, The Law of Zoning and Planning, 3rd ed. vol. 1, pp. 23-30.

In answer to the second objection, township exhibit no. 1 is a copy of the minutes of the March 31, 1960, meeting of the board of supervisors and discloses that a resolution was adopted fixing the time and place for hearing for the proposed zoning change. The pertinent

requirements of section 2101 of the Upper Merion Township Zoning Ordinance are the provisions that the board of supervisors, by resolution, shall fix the time and place for a zoning hearing on proposed amendments and give notice by publication in a newspaper of general circulation 15 days before the date fixed for hearing. Because of an error, the date was advertised as April 21st rather than April 28th as fixed by the resolution. This error was corrected by a specific provision in a notice which was published the required 15 days before the date set for the meeting, April 28, 1960. The rescheduling of the hearing for April 28th was not a fatal defect in the ordinance, there having been substantial compliance with section 2101, and no proof of any prejudice thereby to the complainants. See re: Zoning Amendment of West Goshen Township, 7 Chester 133 (1956).

The objection of plaintiffs set forth above as number 3 is not supported by the notes of testimony of the hearing of April 28th. At that hearing, many residents appeared and stated their views on the proposed amendment and another group signed their names as opposing the amendment. There was no testimony or other evidence before this court that any party in interest was denied an opportunity to be heard.

By their fourth objection, plaintiffs construe the Second Class Township Code as requiring a board of supervisors to take final action on a proposed amendment at the date set for hearing and not as permitting a board of supervisors to take the proposed amendment under consideration for final action at a later date. There is no such requirement contained either in article XX of the Second Class Township Code or in article XXI of the Upper Merion Township Zoning Ordinance of 1942, as amended. This legislation merely requires notice so that interested parties may present their views before a board of supervisors acts. Such a hear-

ing was held and many interested parties appeared and put their views on record. To require immediate action would be ill advised and a cumbersome procedure. See re Schuylkill Township Zoning Ordinance, 7 Chester 123 (1955).

Objections numbers 5 and 6 may likewise be answered by the fact that neither the code nor the ordinance require either publication of an amendment to the ordinance prior to its enactment, or publication of the date on which an amendment to the ordinance will be enacted. Section 2004 of the Second Class Township Code, 53 PS §67004, requires a notice of intention to consider the proposed ordinance at least one week and not more than three weeks prior to *presentation* of the *proposed* ordinance. This is a hearing requirement and was complied with by the 15-day prior notice of intention to consider the proposed ordinance at the meeting of April 28, 1960. There was also compliance with the requirement of this section that the notice include a summary of the principal provisions of the proposed ordinance for the purpose of giving notice of its contents. There is no requirement of another publication before actual enactment.

In answer to objection number seven, the record discloses a recommendation from the Upper Merion Township Planning Commission that the proposed amendment be rejected. Section 2006 of the Second Class Township Code, 53 PS §67006, provides that a board of supervisors shall not act until they receive a report from a zoning commission, or under section 2056, 53 PS §67056, a planning commission, but does not provide that they shall be bound by such report. The board of supervisors complied with this statutory provision: In re Zoning Ordinance of Londonderry Township, 9 Chester 49 (1959).

The fact that the vote and enactment of the ordinance in question was accomplished at the meeting of

June 23, 1960, after this meeting was reconvened, is immaterial. The notice and public hearing held for the consideration of the proposed amendment complied with all the statutory requirements. At that time the proposed amendment was taken under advisement and the vote by the board of supervisors at the meeting of June 23, 1960, was proper.

Objection number 9 that all notices were untimely and insufficient is not substantiated in any way as an examination of the notices admitted as exhibits discloses.

Objection number 10, assuming that the basis of this objection is a requirement, is without substance because the record of the hearing on the proposed amendment held at the meeting of April 28, 1960, discloses that Kjell Ingebrigtsen was duly sworn before testifying.

## Conclusions of Law

1. Plaintiffs have not sustained the specifications of illegality relied upon.

2. The complaint should be dismissed.

3. Plaintiffs should pay the costs.

## Order

And now, April 7, 1961, the complaint is dismissed. Costs shall be paid by plaintiffs.